JEREMY W. FAITH (SBN 190647)
Jeremy@MarguliesFaithLaw.com
ORI S BLUMENFELD (SBN 259112)
Ori@MarguliesFaithLaw.com
**MARGULIES FAITH, LLP**
16030 Ventura Blvd., Suite 470
Encino California 91436
Telephone: (818) 705-2777
Facsimile:  (818) 705-3777

Attorneys for Nancy J. Zamora, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>ARA ERIC HUNANYAN,<br><br>                              Debtor. | Case No.: 1:21-bk-10079-MT<br><br>Chapter:   7<br><br>**CHAPTER 7 TRUSTEE'S RESPONSE TO UNITED STATES TRUSTEE'S OBJECTIONS TO EMPLOY RODEO REALTY INC. AS REAL ESTATE BROKER, AND GROBSTEIN TEEPLE LLP AS ACCOUNTANTS EFFECTIVE JANUARY 28, 2021**<br><br>Date:   May 19, 2021<br>Time:   10:30 a.m.<br>Place:  Courtroom 302<br>           United States Bankruptcy Court<br>           21041 Burbank Blvd.<br>           Woodland Hills, California, 91367 |

**TO THE HONORABLE MAUREEN TIGHE, UNITED STATES BANKRUPTCY JUDGE;**

**THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER PARTIES IN**

**INTEREST:**

Nancy J. Zamora, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate

(the "Bankruptcy Estate") of Ara Eric Hunanyan (the "Debtor"), hereby responds (the

"Response") to the objections ("Objection" or "Objections")[1] of the United States Trustee (the "UST") to the employment applications of Rodeo Realty, Inc. as real estate broker [Dkt. No. 15] ("RR" or the "RR Application"), and Grobstein Teeple LLP as accountants effective January 28, 2021 [Dkt. No.18] ("GT" or the "GT Application"; GT an RR, collectively, the Applicants; and the GT Application and the RR Application, collectively, the "Applications")[2], and responds as follows.

## I.

## The Court Need Not Create Facts Or Rewrite History
## To Approve Employment Of GT and RR As Of The
## Date Services Were First Rendered

Both of the UST's Objections take issue with the proposed effective date of employment of the respective professionals, citing the Supreme Court's ruling in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S.Ct. 696 (2020)("*Acevedo*"). The UST's interpretation of *Acevedo* is overly expansive and would create a gap period in most cases between when a professional begins services on behalf of the estate and when such professional's employment is considered "effective" for purposes of compensation under Section 330. This would be a massive deviation from the practices of this Court for over twenty years.

In *Acevedo*, an action pending in the Puerto Rico Court of First Instance was removed to federal district court, which ultimately remanded the case back to the Court of First Instance. However, prior to the district court's remand order, the Court of First Instance issued payment and seizure orders. *Acevedo at p. 700* The district court's order remanding the action was issued *nunc pro tunc* to a date prior to the issuance of the payment and seizure orders. *Id.* The jurisdiction of the Court of First Instance to issue such orders was challenged and the Supreme Court articulated a standard by which federal courts may not use *nunc pro tunc* orders that create "'facts' that never occurred

---

[1] The UST's Objections to RR's Application and GT's Application are Dkt. Nos. 17 and 31, respectively.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Applications.

2

in fact." *Acevedo at 700-01.* This standard was consistent with already existing Ninth Circuit authority on the limitations of the use of *nunc pro tunc* relief.  The *Acevedo* case dealt with the attempt to create jurisdiction where none existed in order to validate actions that already took place.  It is inapplicable in the instant case.

The UST's reliance on *Acevedo* is based on the Eastern District of California Bankruptcy Court's decision in *In re Miller*, 620 B.R. 637 (Bankr.E.D.CA. 2020), in which Judge Jaime found that *Acevedo* prohibited a retroactive effective date for employment, yet approval of fees retroactively would be allowed under Section 330. This decision appears to be internally inconsistent. The *Miller* court noted that *Acevedo* did not act as a complete prohibition on *nunc pro tunc* orders in the bankruptcy context citing *Sherman v. Harbin (In re Harbin)*, 486 F.3d 510 (9th Cir. 2007)("*Harbin*").  In *Harbin* "the Ninth Circuit contrasted *nunc pro tunc* orders with the equitable discretion that remains with bankruptcy courts to grant retroactive approval under provisions of the Bankruptcy Code which do not expressly require approval to precede the approved act. *Harbin, 486 F.3d at 515 n. 4, 521-22.*" *Miller, at ___.* The Ninth Circuit affirmed the bankruptcy court's order that retroactively approved post-petition financing obtained by a debtor-in-possession that was used to finance a chapter 11 plan. The *Harbin* Court took issue with the use of the term "*nunc pro tunc*", stating that it was a misnomer in the context of a motion to approve financing, stating at footnote 4:

> *Nunc pro tunc* amendments are permitted primarily so that errors in the record may be corrected. The power to amend *nunc pro tunc* is a limited one, and may be used only where necessary to correct a clear mistake and prevent injustice. It does not imply the ability to alter the substance of that which actually transpired or to backdate events to serve some other purpose. Rather, its use is limited to making the record reflect what the . . . court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence.

*United States v. Sumner*, 226 F.3d 1005, 1009-10 (9th Cir. 2000) (internal quotation marks and citations omitted); see also *In re Singson*, 41 F.3d 316, 318 (7th Cir. 1994) (observing that the Latin phrase, "nunc pro tunc" authorization, literally "now for then," refers to situations in which the court, after discovering that its records do not accurately reflect its actions, corrects the records to show what actually happened). Therefore, it is more accurate to refer to the bankruptcy

3

court's approval of the post-petition refinancing of Harbin's residence as "retroactive approval."

Nevertheless, given the prevalent use of "nunc pro tunc" in the bankruptcy context to refer to retroactive authorization, we will continue to use this customary formulation here.

The *Harbin* court rightfully points out "*nunc pro tunc*" relief only applies to a narrow set of circumstances in which the Court needs to make an order retroactive to correct a mistake and accurately reflect the Court's actions.  This was what the Supreme Court confronted in *Acevedo* when the district court created a set of facts, not to correct an error in the record based on the district court's prior decisions, but to create jurisdiction where none previously existed.

Though *Harbin* is consistent with *Acevedo, Miller* remains out of step with *Harbin* as the *Miller* court missed the critical distinction between reinventing facts to fit a certain result versus retroactive approval of an act otherwise authorized by statute that has no prerequisite for obtaining prior approval.

> [N]othing in the language of the Bankruptcy Code precludes the court from considering *nunc pro tunc* authorization [**25] of the refinancing as one possible remedy in response to the "equities of the situation" before it. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). Section 364(c)(2) does not, by its express terms, require the bankruptcy court to authorize the financing transaction before the debt is incurred. Therefore, should a debtor improperly obtain secured financing without prior court authorization, a bankruptcy court's exercise of its equitable discretion in granting *nunc pro tunc* approval pursuant to section 364(c)(2) will not be "inconsistent" with the express provisions of the Bankruptcy Code.

*Harbin, at 522.*

As the Ninth Circuit pointed out, there is no statutory predicate that approval must be obtained prior to obtaining financing under Section 364(c)(2), and that failure to do so can be remedied based on the Court's equitable powers so long as they are consistent with the Bankruptcy Code. Likewise, **the language of Section 327(a) does not mandate prior court approval of employment of a professional**.

The rationale of *Harbin* can equally be applied to the instant applications for employment that seek approval of the effective date in employment that precedes the

date when the order approving employment can be entered. There are no "facts" that have to be created for this to occur, nor is there an error that the Court needs to correct. The Trustee recognizes that such retroactive approval must be an exception as dictated by the equities of the case. However, applying a similar analysis as to that used for retroactive approval of Section 364(c)(2) orders, retroactive approval of the employment of GT and RR is appropriate. *Harbin* cited the four-part test used to determine if retroactive approval of post-petition financing is appropriate.

> [W]e distill four factors that the bankruptcy court should consider in determining whether to exercise its equitable discretion to grant *nunc pro tunc* approval of post-petition financing under section 364(c)(2): (1) whether the financing transaction benefits the bankruptcy estate; (2) whether the creditor has adequately explained its failure to seek prior authorization or otherwise established that it acted in good faith when it failed to seek prior authorization; (3) whether there is full compliance with the requirements of section 364(c)(2); and (4) whether the circumstances of the case present one of those rare situations in which retroactive authorization is appropriate. *See McConville*, 110 F.3d at 50; *Atkins*, 69 F.3d at 974. Provided that these criteria are met, the bankruptcy court may, but need not, grant an application for *nunc pro tunc* authorization.

A similar test can be articulated in the context of employment applications whereby the Court can exercise its equitable authority to approve an effective date for employment that precedes the date of entry of the Court's order. Using the *nunc pro tunc* analysis in *Harbin* as a guide, the Court can approve the applications of GT and RR to the respective effective dates. First, the employment of both GT and RR will benefit the bankruptcy estate as set forth in the applications and elsewhere herein. Second, the professionals did not seek prior court authority as such had never been the standard in the Central District of California and obtaining prior approval would have necessitated putting the employment applications before the Court on an emergency basis. Third, GT and RR have otherwise met all the necessary requirements for employment under Section 327 and 328. Fourth, employment with an effective date that precedes the date of entry of the Court's order approving same is appropriate when the professional does not otherwise delay in filing an employment application.

///

## II.

## The Balance of the UST's Objections to RR's Application are Premature for Purposes of an Employment Application

The UST's objection to RR's employment alleges that the RR Application is silent as to the Bankruptcy Estate's benefit in retaining RR's services and sale of Debtor's properties. The UST's reservations are premature at the employment stage and should be reserved for a later time. Specifically, the issues raised in the UST's Objection is a sale motion issue, not an employment application issue.

The UST's concerns regarding an analysis regarding exempt proceeds from the liquidation of the Debtor's asset and a detailed discussion regarding a supposed carve-out, again, are premature at the employment phase. Nevertheless, with respect to the referenced carve-out, the Trustee is currently engaged with the probate estate of Azniv Kokikian (deceased) aka Azniv Ann Kokikian aka Azniv Meguerian (the "Kokikian Estate") have entered into an agreement in principle that is currently being documented and will be presented to this Court for approval via a FRBP 9019 compromise motion ("9019 Motion"). For purposes of this Response, the Trustee is not prepared to disclose specific terms of that agreement until that agreement is executed.[3] Given the documented antics of, manipulation by, and strategic acts by the Debtor, the Trustee remains cautious about revealing specifics of that agreement prior to filing the 9019 Motion. The Trustee is prepared to submit that the settlement agreement, if approved, will allow the Trustee to obtain funds sufficient to make a meaningful distribution to unsecured creditors in the Bankruptcy Case.

Finally, the UST's Objection to the RR Application asserts that the proposed 2.5% commission for RR in the event of a settlement should not be approved pursuant to 11 U.S.C. § 328. The Trustee does not believe that the Objection extends to the normal sale commission otherwise requested in the event that RR assisted the Trustee with a

---

[3] Should the Court require, the Trustee is prepared to present the draft settlement agreement for *in camera* review.

sale of real estate. The Trustee submits that it was not her intent to request approval of the 2.5% commission in a settlement context under Section 328, and that approval of such is requested and appropriate under Section 330 such that the Court has authority to approve such fee should it otherwise be earned in the context of a settlement as opposed to a sale.

### III.

### CONCLUSION

For the foregoing reasons, the Trustee requests that the Court overrule the UST's objections, and authorize RR and GT's employment pursuant to their respective employment applications.

May 12, 2021                                        **MARGULIES FAITH, LLP**

By: */s/ Jeremy W. Faith*
     Jeremy W. Faith
     Ori S. Blumenfeld
     Attorneys for
     Nancy J. Zamora, Chapter 7 Trustee

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **CHAPTER 7 TRUSTEE'S RESPONSE TO UNITED STATES TRUSTEE'S OBJECTIONS TO EMPLOY RODEO REALTY INC. AS REAL ESTATE BROKER, AND GROBSTEIN TEEPLE LLP AS ACCOUNTANTS EFFECTIVE JANUARY 28, 2021** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 12, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **ATTORNEY FOR INTERESTED PARTY Shraddha Bharatia**   notices@becket-lee.com
- **ATTORNEY FOR TRUSTEE: Ori S Blumenfeld**   Ori@MarguliesFaithLaw.com, Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com
- **ATTORNEY FOR TRUSTEE: Jeremy Faith**   Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- **ATTORNEY FOR US TRUSTEE: Kenneth Misken**   Kenneth.M.Misken@usdoj.gov
- **UNITED STATES TRUSTEE (SV)**   ustpregion16.wh.ecf@usdoj.gov
- **CHAPTER 7 TRUSTEE: Nancy J. Zamora (TR)**   zamora3@aol.com, nzamora@ecf.axosfs.com
- **ATTORNEY FOR DEBTOR: Stephen L Burton**   steveburtonlaw@aol.com, ellie.burtonlaw@gmail.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **May 12, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE:** Pursuant to Amended General Order 20-12, Filed December 8, 2020, no Judge's copy is being served.
DEBTOR: Ara Eric Humanyan 16925 Gault Street, Los Angeles, CA 91406

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 12, 2021 | Angela Saba | /s/ Angela Saba |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                              **F 9013-3.1.PROOF.SERVICE**