**FOR PUBLICATION**

FILED & ENTERED

JUN 10 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gasparia  DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Ara Eric Hunanyan<br><br><br><br><br>Debtor(s). | Case No.: 1:21-bk-10079-MT<br><br>CHAPTER 7<br><br>**MEMORANDUM OF DECISION ON THE CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY GROBSTEIN TEEPLE LLP**<br><br>Date:  May 19, 2021<br>Time:  10:30am<br>Courtroom:  302 (Via ZoomGov) |

On January 19, 2021, Ara Eric Hunanyan (the "Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On February 17, 2021, Nancy Zamora ("Chapter 7 Trustee") filed her Application for Authorization to Employ Grobstein Teeple LLP ("GT") as Accountants Effective as of January 28, 2021. The Chapter 7 Trustee proposes to retain GT to evaluate assets and liabilities of the Debtor, evaluate tax issues related to the Debtor and estate, and prepare tax returns, among other things. This is a routine application to employ for the usual necessary estate services brought within a reasonable time following an evaluation of the estate's needs.

The United States Trustee ("UST") does not object to the Chapter 7 Trustee employing GT as accountants but asserts that the effective date of the employment should be the hearing date or the date the Court signs the order, if there is no hearing. Any actions taken before that date would be compensated as "reasonable, necessary, and beneficial services." The UST does not object to the need for such professionals or raise any conflict or disinterestedness issues but objects to any order retroactive to a date that precedes approval of the employment application. These objections stem from a recent Supreme Court ruling, Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano, 140 S. Ct. 696, 700-01 (2020).

In Acevedo, on February 6, 2018, the Roman Catholic Archdiocese of San Juan, Puerto Rico (the "Archdiocese") removed the case from a Puerto Rico court to the federal district court. Acevedo, 140 S. Ct. at 699-700. On March 16, March 26 and March 27, 2018, after the case had been removed to the federal district court, the Puerto Rico court entered certain payment and seizure orders against the Archdiocese (the "Puerto Rico Orders"). Id. at 700. Approximately five months later, the federal district court remanded the case to the Puerto Rico court. Id. The remand order was *nunc pro tunc*, stating that the remand was effective March 13, 2018. Id. at 700. One of the issues before the Supreme Court of the United States was whether the Puerto Rico Orders were effective despite the fact that, at the time the Puerto Rico Orders were entered, the federal district court had jurisdiction over the case. The Supreme Court held that the Puerto Rico court lacked jurisdiction to enter the Puerto Rico Orders, and that the federal district court could not provide *nunc pro tunc* relief, stating:

> Federal courts may issue *nunc pro tunc* orders, or "now for then" orders, Black's Law Dictionary, at 1287, to "reflect the reality"

of what has already occurred, Missouri v. Jenkins, 495 U.S. 33, 49, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990). "Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." Cuebas y Arredondo v. Cuebas y Arredondo, 223 U.S. 376, 390, 32 S.Ct. 277, 56 L.Ed. 476 (1912).

Put colorfully, "*[n]unc pro tunc* orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact." United States v. Gillespie, 666 F.Supp. 1137, 1139 (N.D. Ill. 1987). Put plainly, the court "cannot make the record what it is not." Jenkins, 495 U.S. at 49, 110 S.Ct. 1651.

Nothing occurred in the District Court case on March 13, 2018. See Order Granting Motion to Remand in No. 3:18–cv–01060 (noting, on August 20, 2018, that the motion is "hereby" granted and ordering judgment "accordingly").… [T]he case remained in federal court until that court, on August 20, reached a decision about the motion to remand that was pending before it. The [Puerto Rico court's] actions in the interim, including the payment and seizure orders, are void.

Id., at 700-01.

The UST urges the court to adopt the reasoning of courts recently applying Acevedo to applications for employment in bankruptcy cases and finding that approval of employment before the hearing date must be done on a *nunc pro tunc* basis. See In re Miller, 620 B.R. 637 (E.D. Cal. Bankr. 2020) citing In re Roberts, 618 B.R. 213, 217 (Bankr. S.D. Ohio 2020) and In re Benitez, 2020 WL 1272258, *2 (Bankr. E.D.N.Y. March 13, 2020).

The objection is overruled because Acevedo does not change the existing authority of the court to approve employment that has commenced before the motion was brought. Acevedo reiterates a long-established principle "that jurisdiction in the federal courts must emanate from the United States Constitution or a statute and cannot be created by the actions of a court." In re Merriman, 616 B.R. 381, 391-95 (B.A.P. 9th Cir. 2020). As the Ninth Circuit BAP explained with

respect to § 362(d) of the Bankruptcy Code, a specific statute conferring authority on the court does not exceed the court's jurisdiction in the way the language of the removal statute prohibited the court from exercising jurisdiction in Acevedo. Id. at 392. The court has explicit authority under 11 U.S.C.§ 327 to approve this employment application without resorting to equitable principles or issuing *nunc pro tunc* orders.

Statutory Scheme Governing Employment and Approval of Fees

11 U.S.C § 327(a) provides that "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." The remainder of § 327 goes on to enumerate various special situations related to employment or authorization to act on behalf of the estate.

Employment approval is further implemented through F.R. Bankr. P. 2014(a) which requires the employment application to be served on certain parties and to "state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." In order to provide more detail for determining any conflicts of interest, the application also must be "accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any

other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Id.

Section 330 then addresses the subsequent compensation of those employed by the estate under § 327, as compensation can be approved only after the professional has been properly employed under § 327. See § 330(a)(1); DeRonde v. Shirley (In re Shirley), 134 B.R. 940, 943-44 (B.A.P. 9th Cir. 1991); see also Shapiro Buchman LLP v. Gore Bros. (In re Monument Auto Detail, Inc.), 226 B.R. 219, 224 (B.A.P. 9th Cir. 1998). In addition to approval of the employment, § 330 also details a list of considerations governing compensation such as whether the compensation sought is reasonable, was necessary, the rates charged, what is customary, whether there was duplication of services, and whether the services were performed in a reasonable amount of time. See 11 U.S.C. § 330(a)(1) – (a)(4).

When interpreting a statute, the court's "task is to construe what Congress has enacted." Duncan v. Walker, 533 U.S. 167, 172 (2001). Courts will "look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 830 (9th Cir. 1996). "A primary canon of statutory interpretation is that the language of a statute should be enforced according to its terms, in light of its context." ASARCO, LLC v. Celanese Chem. Co., 792 F.3d 1203, 1210 (9th Cir. 2015) (citing Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). "If the terms are ambiguous, [the Court] may look to other sources to determine congressional intent, such as the canons of construction or the statute's legislative history." United States v. Nader, 542 F.3d 713, 717 (9th Cir. 2008) (citing Jonah R. v. Carmona, 446 F.3d 1000, 1005 (9th Cir. 2006).

Although sections 327 and 330 are necessarily intertwined, they have separate statutory requirements and serve separate purposes. Approval of employment is necessary initially to be sure the professionals are truly necessary, disinterested, qualified and reasonably priced. Approval of fees, on the other hand, is contemplated to take place significantly after employment was approved, and usually when all or most of the work has been completed. Fee approval involves other considerations that can only be evaluated after the work is done and its value to the estate observed. See § 330(a)(1) – (a)(4).

Unlike many sections of the Bankruptcy Code, neither section has a temporal requirement for when the application should be filed. Fed. Bankr. R. 2014(a) also has no deadline for filing the employment application. Compare, *e.g.*, § 362(c)(3)(A) (automatic stay expires 30 days after case was filed where a case was pending in the previous year); § 365(d)(1) (60-day deadline to assume or reject a lease). Although there is no stated time limit in § 327, the implication is that the employment application should occur quickly. Logically, if Congress has required approval of employment to ensure that estate resources are not wasted and that professionals are qualified and not conflicted, this should generally occur before the administration of the estate proceeds very far. Accord, In re Jarvis, 53 F.3d 416, 419 (1995) (§ 327(a) neither expressly sanctions nor expressly forbids the *post facto* authorization of outside professional services.) Courts have repeatedly remarked on this ambiguity. See, *e.g.*, In re Singson, 41 F.3d 316, 319 (7th Cir. 1994); In re Triangle Chems., Inc., 697 F.2d 1280, 1289 (5th Cir. 1983) (The most that can be fairly said is that the language of both statute and rule contemplates prior authorization).[1]

---

[11] The court recognizes there is a statement in Sherman v. Harbin, 486 F.3d 510, 521(9th Cir. 2007) that the court in In re Atkins, 69 F.3d 970 (9th Cir 1995), interpreted § 327 "as requiring prior court authorization of professional services rendered to the bankruptcy estate." Harbin citing Atkins, 69 F.3d at 973. As explained later, the Atkins court addressed approval of services

Adding to this situation, every employment application where work must start immediately seeks a form of retroactive approval because an employment application cannot get approved until it is noticed pursuant to Fed. R. Bankr. P. 9013, requiring a written motion done within the time requirements of Fed. R. Bankr. P. 9006(d) which requires at least 7 days-notice. Fed. R. Bankr. P. 6003(a) specifically prohibits an order granting an application under Fed. R. Bankr. P. 2014 within the first 21 days of a case without a showing of immediate and irreparable harm. See Miller, 620 B.R. at 643 ('The concept of retroactive compensation is incorporated into the Federal Rules of Bankruptcy Procedure as prescribed by the Supreme Court.").

Where professional assistance is needed before the noticed hearing can be held, the trustees must determine if action is needed quickly to properly carry out required duties under 11 U.S.C. § 704(a), and a court review is necessarily done later of both the employment criteria and the fees incurred. Reading Acevedo as adding the word "prior" before the words "court's approval" under § 327(a)) not only adds a requirement Congress did not include but may function as contrary to the duties of the trustee or debtor in possession to protect the interests of the bankruptcy estate from the time a bankruptcy petition is first filed. Nothing in the language of § 704 or § 327 requires the trustee to wait for the court's approval before exercising her duties. Any subsequent disapproval of employment must be based on the criteria enumerated in § 327 and Fed. R. Bankr. P. 2014. Proferring a "satisfactory explanation for a failure to receive pre-employment approval," Atkins

---

under § 330 and was referring to the prior approval requirement under § 327 required for approval of services under § 330. Atkins is consistent with Jarvis, Singson and Triangle Chems. on this issue.

v. Wain, 69 F.3d 970, 975 (9th Cir. 1995), makes no sense when the rules themselves provide for it.

Retroactive or *nunc pro tunc* approval is required where the language of the statute actually provides for court approval **before** the action is taken. In Sherman v. Harbin (In re Harbin), 486 F.3d 510 (9th Cir. 2007), a debtor secured financing without first obtaining bankruptcy court approval under § 364(c)(2). Section 364(c)(2) provides specifically that "the court, **after** notice and a hearing, may authorize the obtaining of credit or the incurring of debt." (emphasis added.) This section is written in a way that the debt may not be incurred until the court has given its approval, and the Ninth Circuit has authorized the court to rescind the transaction if prior authorization is not obtained. Thompson v. Margen (In re McConville), 110 F.3d 47, 50 (9th Cir. 1997) (court has authority to cancel the transaction but should consider the equities.) Section 327 contains no such sequencing of approval before the action is taken.

Given the lack of any temporal requirement in either § 327 or Fed. R. Bankr. P. 2014, the question is still how to address employment applications brought after work has started. Although the work may commence before the application is filed, this is not license to wait indefinitely for court approval. Waiting delays court oversight and makes the review more difficult. As discussed below, caselaw adequately addresses this situation and consistently recognizes the ability of courts to approve both employment and compensation where there were long delays in employment applications with a requirement that professionals show "extraordinary" or "exceptional" circumstances. In re Jarvis, 53 F.3d at 421; Atkins, 69 F. 3d at 974.

Approving Pre-employment Fees Separately

The UST and cases following Miller's reasoning interpret the delayed application cases after Acevedo as only granting employment approval going forward from the hearing, regardless of how timely the application for employment is. Any compensation sought for pre-approval work must then be reviewed separately solely under a reasonable and necessary standard, and not under § 330. See Miller, 620 B.R. at 644. This is an understandable approach as bankruptcy courts do possess the equitable power to retroactively approve a professional's valuable but unauthorized services. See Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.), 40 F.3d 1059, 1062 (9th Cir. 1994). These approaches, however, were developed where there were lengthy delays and not routine timely employment applications. The argument for applying "*nunc pro tunc*" approval to employment applications brought timely after commencement of services seems to be saying "no harm, no foul" if Acevedo is interpreted so broadly. As discussed below, this approach confuses the court's authority under § 330 and is not appropriate for employment applications brought timely.

Initially, this approach substitutes the phrase "with **prior** court approval" for "with the court's approval" to § 327, something Congress did not legislate. It also may present other complications. There are important reasons employment and compensation are separately authorized beyond the practicalities of timing. The purpose of a trustee employing a professional is "to represent or assist the trustee in carrying out the trustee's duties." § 327(a). These can be significant in the early days and weeks of a case. Not every estate can wait until an employment application is prepared, noticed for hearing and ruled on before the professional can commence work.

A professional hired by the trustee needs the authority of an estate representative to be effective without a question as to the legitimacy of employment. For example, what is the professional's capacity to enter into a contract before employment is authorized? Will rents, receivables, and other proceeds be irretrievably lost where an agent cannot take action quickly on behalf of the trustee? How can a professional adequately secure disappearing books and records where her employment can be questioned? This uncertainty just encourages litigation for tactical advantage over a non-issue. In the early days of some cases, only those professionals willing to take on work at their own financial risk may make the difference as to whether estate assets and records are secured for creditors.

The professional always faces the risk that her employment will not be compensated under § 330(a)(1)(A) if, at a later date, the work is found to have not been reasonable and necessary. Bankruptcy professionals also face the risk that there will be no assets from which they can be paid. This places an inherent discipline on the analysis of whether to spend time and money working on behalf of the estate. Any professional working on behalf of the estate must receive court approval at some time even where the estate itself is not compensating the professional. See Ferrara & Hantman v. Alvarez (In re Engel), 124 F.3d 567, 571 (3d Cir. 1997) (court approval required regardless of source of compensation; failure to obtain approval can result in disgorgement even of third-party funds). These situations all illustrate why the statutory scheme separates court authorization for estate professional's activities regardless of compensation source or later evaluation of compensation.

The timeliness of submission of an employment application has previously arisen only when the employment application was filed long after the employment

commenced, and usually where it is at the same time as fees are sought under § 330. A body of law has developed determining when a delay is too long to warrant the payment of fees or denial of employment. Because it was not necessary in those situations to distinguish between "employment" under § 327 and "compensation" under § 330, cases have used the terms 'employment' and 'services' somewhat interchangeably to the detriment of understanding the different functions of employment approval and compensation awards.[2]

Atkins v. Wain, 69 F.3d 970 (9th Cir. 1995), a key Ninth Circuit case on the issue, is a prime example of the way *dicta* confusing the two functions has confused approval of employment and approval of compensation, two separate functions. The case concerned approval of tax accounting services where there was a delay of 14 months between commencement of services and the filing of both an employment and compensation application. The case notes that approval of employment must be authorized under § 327 for compensation to be approved. Id. at 973. Atkins then clarifies the standards for approving compensation where the employment application is brought late along with the compensation request. Courts may approve these compensation requests where exceptional circumstances are shown. To establish the presence of exceptional circumstances, professionals seeking retroactive approval must satisfy two requirements: they must (1)

---

[2] These cases also seem to be where the use of the phrase *nunc pro tunc* came into common use in the employment context as it refers to retroactive approvals. *Nunc pro tunc* generally operates to give retroactive effect to an order or other act. Black's Law Dictionary explains it as "[a] phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, i.e., with the same effect as if regularly done." It "signifies now for then, or, in other words, a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done. State v. Hatley, 72 N.M. 377, 384 P.2d 252, 254." Id. *Nunc pro tunc* amendments are permitted primarily so that errors in the record can be corrected. It does not imply the ability to alter the substance of that which actually transpired. Harbin at 514, fn 4. See also Mitchell v. Overman, 103 U.S. 62, 64 (1880)("the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered.")

satisfactorily explain their failure to receive prior judicial approval; and (2) demonstrate that their services benefitted the bankrupt estate in a significant manner. Atkins, 69 F.3d at 974.  Although the discussion of compensation refers to §327(a) and Fed. R. Bankr. P. 2014(a), the opinion focuses on the ability of the court to "approve retroactively a professional's valuable but unauthorized services," which are only approved under §330. There was never any discussion of the criteria at issue under § 327 or F. R. Bank. P. 2014. The standard established by the Circuit looks at whether the services were valuable, in part, to determine whether employment should be approved retroactively. The ability to eliminate or reduce compensation is a powerful incentive to file employment applications as early as possible, but it does not change whether the employment was proper under §327.

Atkins cites to Halperin v. Occidental Fin. Group (In re Occidental Fin. Group, Inc.), 40 F.3d 1059 (9th Cir. 1994), as one of the early cases establishing the standards for approval of fees where the employment application was filed long after the work commenced.  Occidental involved an employment application that was filed seven months after services started. The bankruptcy court denied the employment application, not because it was late, but because the professional had a conflict of interest and was not serving the interests of the estate, classic discussions of § 327's conflict of interests considerations. The court found that the attorney was representing the interests of the principals of the debtor and not the debtor. The attorney argued that he should still be paid for substantial services to the estate. The fees were ordered disgorged because the conflict of interest prevented the services from being clearly beneficial to the estate to begin with. The reasoning of the opinion details why knowing about a potential conflict of interest is necessary early in the employment. The denial of compensation flowed from the

lack of employment approval, but employment was properly treated as a separate question from compensation. Id. at 1062.

In re THC Fin. Corp., 837 F.2d 389 (9th Cir. 1988) is cited in Atkins and other cases as one of the early cases establishing the standards for retroactive approval of employment. See Atkins, 69 F.3d at 972. In THC Fin. Corp., an attorney provided services to the trustee for four years before seeking court approval of compensation, arguing that she was not required to seek approval of employment because of the nature of the services she provided. The Ninth Circuit found that approval of employment was indeed required under the predecessor to § 327. Id. at 392. The court then analyzed whether the services could be compensated anyway even if the services were not authorized. The denial of fees was based on an analysis of a lack of benefit to the estate, not due to the lack of an employment application or late filed application for compensation. While the case has been cited in connection with late employment applications, there had never been any effort to obtain approval of employment. The court set the standard for compensation where there was a failure to receive prior judicial approval as follows: "[S]uch awards should be limited to exceptional circumstances where an applicant can show both a satisfactory explanation for the failure to receive prior judicial approval and that he or she has benefitted the bankrupt estate in some significant manner." Id.  The opinion most definitely is warning to professionals that getting early approval, whether they think they need it or not, is a more likely way to be compensated, but the question of whether one should even be employed is treated as a different issue than whether compensation should be paid.

These delayed application cases are better understood as exercising the court's control of compensation as a tool to have timely oversight of the use of estate assets. The employment application must be reviewed for conflicts, but it is

also a preview of whether the estate should be compensating certain professional services. Where that is unreasonably delayed, explanations and greater scrutiny are in order. Although approval of the employment was delayed and the authorization was needed before any compensation could be paid, the employment itself was not a fiction.

Understanding <u>Acevedo</u> this way honors both the Supreme Court's ruling and Congress' statutory language. Unreasonable delays in bringing employment applications do require explanation and the professionals must justify the delay. Imposing any *nunc pro tunc* requirements here where the application was brought timely is too broad and not necessary under <u>Acevedo</u>. This is a common and appropriate exercise of the trustee's duties, performed without delay; it is important not to start treating timely employment applications as something extraordinary and unnecessarily erect additional costs and risks on the estate.

For all of these reasons, the employment of GT is approved effective January 28, 2021, the date work was commenced. Any question of whether work was necessary and reasonable is saved for a review of the contemplated fee application.

###

Date: June 10, 2021

Maureen A. Tighe
United States Bankruptcy Judge

-14-